

**SIGNED this 23 day of August, 2007.**

```
                                    _____
                                         Marcia Phillips Parsons
                                      UNITED STATES BANKRUPTCY JUDGE
```
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | |
| LOUIS PRESTON KNIGHT and<br>SHERRY MICHELE KNIGHT,<br><br>　　　　Debtors. | No. 05-53681<br>Chapter 7 |
| McKEE BUILDERS, INC.,<br><br>　　Plaintiff,<br><br>vs.<br><br>LOUIS PRESTON KNIGHT and<br>SHERRY MICHELE KNIGHT,<br><br>　　Defendants. | Adv. Pro. No. 06-5003 |

### M E M O R A N D U M

APPEARANCES:

　　　　Dean Greer, Esq.　　　　　　　　　　Dave B. Jordan, Esq.
　　　　Post Office Box 3708　　　　　　　　Post Office Box 5215
　　　　Kingsport, Tennessee 37664　　　　　Kingsport, Tennessee 37663
　　　　*Attorney for McKee Builders, Inc.*　　　*Attorney for Louis and Sherry Knight*

**MARCIA PHILLIPS PARSONS
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court on the defendants' motion for summary judgment on the plaintiff's complaint objecting to discharge and for a determination of nondischargeability of debt and the plaintiff's motion to dismiss any claim of offset or counterclaim raised by the defendants. For the following reasons, the defendants' motion will be granted in part and denied in part; the plaintiff's motion will be denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I) and (J).

I.

The defendants Louis and Sherry Knight filed a chapter 7 bankruptcy petition on September 23, 2005, along with the requisite schedules and statements. The plaintiff McKee Builders, Inc. was listed on Schedule F as an unsecured creditor having a claim of $12,000 for "home repairs." The plaintiff's pending general sessions court civil action against the defendants was listed on the statement of financial affairs. On Schedule A at item no. 20 the defendants checked "none" in response to the existence of any "counterclaims of the debtor, and rights to setoff claims."

The plaintiff filed its complaint commencing this adversary proceeding on January 3, 2006, concerning the plaintiff's construction of the defendants' residence. The background of the dispute began when the cost of completion totaled some $80,000 more than the plaintiff's original estimate of $240,500. The parties thus had a falling out when the construction loan that the defendants had obtained from the Bank of Tennessee in the amount of $256,860 proved insufficient to complete the construction, prompting the defendants to direct the plaintiff to leave the construction site. In order to reach a settlement to allow the payment of subcontractors and suppliers and removal of the plaintiff's construction lien, the parties negotiated an agreement that provided the plaintiff would release its lien in exchange for the defendants' (1) assignment to the plaintiff of the last $23,000 draw under the construction loan for payment to various subcontractors and suppliers; and (2) execution of a promissory note payable to the plaintiff in the amount of $13,434.04 with interest. The parties' handwritten agreement also required the defendants to apply for refinancing of the residence to generate sufficient funds to pay the note, with the application to be made within 30 days of the filing of a final deed of trust by Bank of Tennessee, and for the refinancing to be completed within 120 days of the filing date "or the note shall commence interest at 6% until paid in full."

The plaintiff asserts in its complaint that the defendants should be denied a discharge in accordance with 11 U.S.C. § 727(a)(2)(A), (4), and (5) and that the debt should not be discharged pursuant to 11 U.S.C. § 523(a)(2)(A). As grounds for its § 727(a)(2)(A) claim, the plaintiff alleges that when the defendants entered into the settlement agreement on March 8, 2004, they did so "with the intent to defraud the Plaintiff" because they subsequently "were successful in obtaining an additional extension of credit from Bank of Tennessee" but "paid nothing to Plaintiff from the proceeds of the additional disbursement from Bank of Tennessee."

Concerning the § 727(a)(4) claim, the plaintiff states that the defendants "misrepresented the value of exempt property on Schedule C of the petition, first claiming the value of furniture, computer, television and appliances to be $2,000.00, later amending same to reflect a value of $4,500.00." The plaintiff also contends that the defendants "represented to the Court an inability to satisfy additional indebtedness as reflected on Schedules I and J which reflect a combined monthly income of $8,036.08, and a combined net expenditure per month of $7,962.04" and "are placing $489.59 in 401K plans which are consequently out of the reach of creditors." According to the complaint, the defendants "fraudulently display an inability to pay by the inclusion of these amounts on the various schedules."

For its § 727(a)(5) claim, the plaintiff alleges that the defendants "have failed to explain satisfactorily why the proceeds of the additional extension of credit from Bank of Tennessee were dissipated to place debtors in a position that they were unable to meet their liabilities."

Lastly, the grounds asserted by the plaintiff for its § 523(a)(2)(A) claim is that the defendants "with the intent to delay, hinder, and defraud Plaintiff, induced Plaintiff into entering the agreement on March 8, 2004, and the note executed therewith, . . . fully anticipating that Defendants would eventually avoid all payment to Plaintiff." The plaintiff states that the defendants' "fraudulent intent is evidenced by their failure to remit to Plaintiff funds which were generated from the additional extension of credit from Bank of Tennessee."

In their verified answer, the defendants deny that they intended to or in fact defrauded the plaintiff. The defendants indicate in their undisputed statement of material facts that they were unable to obtain refinancing of the residence due to prohibitive costs, but that they were able to

obtain a second mortgage from Bank of Tennessee for $32,000 or $34,000 on April 6, 2004. According to the defendants, they used the proceeds from the second mortgage along with funds they borrowed from their 401(k) plan and credit cards totaling $68,000 in an effort to complete construction of the residence. As for their failure to payoff the promissory note, the defendants state in their answer that at the time they obtained the extension of credit, they had begun to have problems with the flooring installed by the plaintiff and had requested that the plaintiff cure or adjust the amount due to resolve the problems. As an affirmative defense, the defendants claim a right of offset against the plaintiff in the amount of $11,269.05 for the amount needed to correct the improper installation of the flooring in the residence.

On August 7, 2007, the plaintiff filed its motion to dismiss any claim of offset or counterclaim raised by the defendants, based on the failure of the defendants to list such a claim in their schedules. The defendants have not responded to the motion.

On August 9, 2007, the defendants filed their motion for summary judgment along with a brief in support and a statement of undisputed material facts. On August 21, 2007, the plaintiff filed a brief in opposition to the defendants' motion, although the brief only addressed the § 523(a) nondischargeability claim, and argues in this regard that there is a genuine issue of material fact as to whether the defendants intended to defraud the plaintiff when they executed the settlement agreement and promissory note. The plaintiff also filed a response to the defendants' statement of undisputed material facts. The plaintiff denies in the response that payments made by the defendants from the second mortgage proceeds were in furtherance of the terms of the settlement agreement. The plaintiff also denies the defendants' statement that they used approximately $68,000, money borrowed from their 401(k) plan and credit cards together with the second mortgage note proceeds, to finish construction of their home. Additionally, the plaintiff submitted its own statement of undisputed material facts. These statements are that Mr. Knight represented that he intended to pay the plaintiff from the second mortgage, that the defendants assured attorney Christopher Raines when the note was executed that they would pay the plaintiff, that the plaintiff relied upon these assurances, and that the Bank of Tennessee insisted that the plaintiff release its lien before making the second mortgage loan.

4

II.

Federal Rule of Civil Procedure 56, as incorporated by Fed. R. Bankr. P. 7056, mandates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)). "A genuine issue for trial exists only when there is sufficient 'evidence on which the [court] could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In this regard, a verified answer such as that filed by the defendants is "treated as the functional equivalent of an affidavit to the extent it satisfies the standards explicated in Rule 56(e)." *Neal v. Kelly*, 963 F.2d 453, 457 (C.A.D.C. 1992); *see also Hooks v. Hooks*, 771 F.2d 935, 945 (6th Cir. 1985) (verification of complaint satisfies requirements of Rule 56(e) as an opposing affidavit). The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-52. In considering the motion, the court must construe all reasonable inferences in favor of the nonmoving party. *See Spradlin v. Jarvis* (*In re Tri-City Turf Club, Inc.*), 323 F.3d 439, 442 (6th Cir. 2003). The party opposing a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* at 442-43 (citations omitted). "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co.,* 258 F.3d 488, 493 (6th Cir. 2001) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 349 (6th Cir. 1998)).

5

The plaintiff has the burden of proof on all issues. Fed. R. Bankr. P. 4005 (discharge); *Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998) (dischargeability). The standard, both with respect to denial of discharge and a determination of nondischargeability, is preponderance of the evidence. *See Keeney v. Smith* (*In re Keeney*), 227 F.3d 679, 683 (6th Cir. 2000) (discharge); *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 660 (1991) (dischargeability). Furthermore, "[t]he Bankruptcy Code should be construed liberally in favor of the debtor." *Id.* (citing *Gillickson v. Brown* (*In re Brown*), 108 F.3d 1290, 1292 (10th Cir. 1997)).

III.

Denial of Discharge under 11 U.S.C. § 727(a)(2)(A). The first ground raised by the plaintiff is denial of discharge under § 727(a)(2)(A), which provides:

> (a) The court shall grant a discharge, unless—
>     (2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>         (A) property of the debtor, within one year before the date of the filing of the petition[.]

As construed by the Sixth Circuit Court of Appeals, this provision encompasses two distinct elements: "(1) a disposition of property, such as concealment, and (2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property.'" *In re Keeney*, 227 F.3d at 683 (quoting *Hughes v. Lawson* (*In re Lawson*), 122 F.3d 1237, 1240 (9th Cir. 1997)). "[B]oth elements (the act of concealment and requisite intent) must occur within a year before the bankruptcy petition is filed." *Id*. at 684.

In this instance, the plaintiff alleges that the defendants' intent to defraud occurred when the defendants entered into the settlement agreement and executed the promissory note in favor of the plaintiff, events that took place on March 8, 2004, and April 6, 2004, respectively. However, neither of these dates was within one year of the bankruptcy filing on September 23, 2005. Furthermore, there is no allegation by the plaintiff in its complaint that the defendants' alleged dissipation of the proceeds from the second mortgage occurred within the year prior to the defendants' bankruptcy filing. The defendants indicate in their statement of undisputed material facts that they obtained the

6

second mortgage on April 6, 2004, but the proof of claim filed by the Bank of Tennessee indicates that the loan date was May 7, 2004. In either event, both dates are outside the required one-year period. Accordingly, the defendants are entitled to summary judgment on this claim.

<u>Denial of Discharge under 11 U.S.C. § 727(a)(4)</u>. The second ground raised by the plaintiff is denial of discharge under § 727(a)(2)(4), which provides:

> (a) The court shall grant a discharge, unless—
>
>     . . . .
>
>     (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
>> (A) made a false oath or account;
>>
>> (B) presented or used a false claim;
>>
>> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>>
>> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

Although the plaintiff failed to indicate in its complaint the pertinent subsection, it appears that the plaintiff is relying upon subsection (A) as the plaintiff claims that because of certain misrepresentations in their Schedules C, I and J, the defendants "fraudulently display[ed] an inability to pay by the inclusion of these amounts on the various schedules." A party objecting to a debtor's discharge pursuant to § 727(a)(4)(A) must establish that "(1) the debtor made a statement while under oath, (2) the statement was false, (3) the statement related materially to the bankruptcy case, (4) the debtor knew the statement was false, and (5) the debtor made the statement with fraudulent intent." *Hamo v. Wilson* (*In re Hamo*), 233 B.R. 718 (B.A.P. 6th Cir. 1999).

The defendants' statement of undisputed material facts concerning Schedules I and J indicate that the principal of the plaintiff "admitted [in his deposition] that he knew of no facts tending to show that the $8,036.08 combined net monthly income shown in the schedules was inaccurate . . . [, that he] knew of no facts tending to prove that the $7,962.04 combined net expenditures listed in the schedules was inaccurate" and "that he had not done an inspection or compilation of what the

furniture is worth and had not had anybody do one." In its response, the plaintiff admits these facts for purposes of summary judgment. Regarding alleged misrepresentations in Schedule C, the defendants indicate in the verified answer that they amended their Schedules B and C prior to the commencement of this adversary proceeding to list and exempt their interests in 401(k) plans and to increase and additionally exempt the value of items in their home by $2,500. Neither the plaintiff's brief nor statement of undisputed material facts addresses these alleged misstatements by the defendants.

"[I]t is well established that a court may consider the debtor's subsequent voluntary disclosure as evidence of innocent intent." *Zitwer v. Kelly* (*In re Kelly*), 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992). Moreover, where the entire value of the items included on the amendments are totally exempt, as in the case here, a debtor's failure to originally list and correctly value these items is not "indicative of [a] fraudulent intent to defraud creditors." *Sprague, Thall & Albert v. Woerner* (*In re Woerner*), 66 B.R. 964, 974 (Bankr. E.D. Pa. 1986). Because of the plaintiff's admission and/or failure to refute the evidence presented by the defendants that their schedules did not contain false statements made with fraudulent intent, the defendants will be granted summary judgment on this claim.

<u>Denial of Discharge under 11 U.S.C. § 727(a)(5)</u>. The last statutory basis for denial of discharge raised by the plaintiff is § 727(a)(5), which provides that a bankruptcy court may deny the discharge of debts when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). "[O]nce a plaintiff meets the initial burden of producing evidence to prove the facts to establish the objection, the burden of going forward with the evidence that will 'explain satisfactorily' the losses or deficiencies shifts to the debtor." 6 *Collier on Bankruptcy* ¶ 727.08 (citing *Farouki v. Emirates Bank Int'l Ltd.*, 14 F.3d 244 (4th Cir. 1994); *Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616 (11th Cir. 1984)).

> Section 727(a)(5) requires that there be a satisfactory explanation of the loss of an asset, but does not require that the explanation be meritorious. W. Norton, 1 *Norton Bankr. L. & Practice* § 27.20 at 27-39 (1982). "Properly construed, the objections should not be sustained based on the substantive character of the explanation." *Id.* The court need only decide whether the explanation satisfactorily describes what happened to the assets, not whether what happened to the assets was

8

proper.

*Great Am. Ins. Co. v. Nye* (*In re Nye*), 64 B.R. 759, 762 (Bankr. E.D.N.C. 1986).

The plaintiff contends that the defendants have failed to adequately explain how they used the proceeds from the second mortgage and why these loan proceeds were not available to pay the plaintiff and other creditors. In their statement of undisputed material facts, the defendants indicate that they obtained the second mortgage from Bank of Tennessee on April 6, 2004 in the amount of either $32,000 or $34,000 and that $23,000 of the proceeds were used to pay three named creditors. However, as previously noted, the proof of claim by Bank of Tennessee indicates that the second mortgage was not obtained until May 7, 2004. From the evidence that is presently before the court, it appears that the three named creditors paid on April 6, 2004, were actually paid from the last draw on the first mortgage, as indicated in the parties' settlement agreement. This conclusion is consistent with the attachments to Bank of Tennessee's proof of claim regarding its first mortgage, which reflects that the loan balance was increased from $256,860 to $283,500 on January 29, 2004.

The defendants also set forth in their statement of undisputed material facts that they used the second mortgage proceeds along with money borrowed from their 401(k) and credit cards to finish construction of their home. In support of this statement, they rely upon Mr. Knight's statements in his deposition that all the money went to finish the house. However, Mr. Knight also admitted in his deposition that the defendants moved into the home on March 6, 2004, and that it was complete at that time "[e]xcept for the outside, . . . [l]andscaping, grass, things of that nature." It was unclear from his testimony what was specifically done with the second mortgage proceeds, if in fact they were not received until May 7, 2004.

Based on the foregoing, the court concludes that a genuine issue of material fact exists as to whether the defendants have adequately explained the loss of assets to satisfy their liabilities. Accordingly, the defendants' motion for summary judgment will be denied as to the plaintiff's § 727(a)(5) claim.

<u>Dischargeability of Debt under 11 U.S.C. § 523(a)(2)(A)</u>. The only remaining issue as to the defendants' motion is the plaintiff's nondischargeability claim under § 523(a)(2)(A) which provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

In this regard, the court presumes that the settlement agreement and resulting execution of the promissory note created a debt for "an extension, renewal, or refinancing of credit" for the purposes of § 523(a)(2). In their verified answer, the defendants "deny any fraudulent intent or conduct towards the Plaintiff" and explain that the note was not repaid because they "began to have problems with the flooring installed by the Plaintiff" and "requested at that time [the proceeds from the second mortgage were disbursed] that the Plaintiff cure or adjust the amount due to resolve the problem.

In its response in opposition, the plaintiff references Mr. Knight's statements in his deposition that the defendants intended to pay the plaintiff from the second mortgage and that Bank of Tennessee insisted that the plaintiff's lien be released before it made the loan for the second mortgage. The plaintiff also cites the deposition transcript of attorney Christopher Raines wherein he states that the defendants assured him that they would pay the plaintiff when they executed the note in favor of the plaintiff. Finally, the plaintiff points out that the defendants only paid $50 on the note.

In effect, the plaintiff is arguing that because the defendants promised to pay the plaintiff but failed to do so, their conduct was fraudulent. However, a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A). "Instead, central to the concept of fraud is the existence of scienter which, for the purposes of § 523(a)(2)(A), requires that it be shown that at the time the debt was incurred, there existed no intent on the part of the debtor to repay the obligation." *EDM Mach. Sales, Inc. v. Harrison* (*In re Harrison*), 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (citations omitted).

In the face of the defendants' denial of any intent to defraud the plaintiff, proof of fraud at the inception is difficult to establish, although fraudulent intent may be inferred from the facts and circumstances of the case.  Notwithstanding the paucity of evidence indicating fraud, this court is constrained to consider such evidence in the light most favorable to the plaintiff, the non-moving party.  When the evidence cited by the plaintiff is considered along with the remaining issue of the disposition of the second mortgage proceeds, the court must conclude that a genuine issue of material fact exists as to the plaintiff's § 523(a)(2)(A) claim.  Accordingly, the defendants' motion for summary judgment will be denied in this regard.

## IV.

With regard to the plaintiff's motion to dismiss any claim of offset or counterclaim raised by the defendants,  the plaintiff has not filed a brief in support of its motion as required by E.D. Tenn. LBR 7007-1.  Accordingly, the plaintiff's motion will be denied for this reason.  Moreover, it must be noted in this regard that although the defendants reserved in their answer all rights of setoff and counterclaim against the plaintiff pending completion of discovery, no counterclaim has been filed, notwithstanding the completion of discovery.  The defendants did claim a right of offset as an affirmative defense in their answer, but any such claim is unnecessary as the plaintiff has not sought a money judgment against the defendants in this adversary proceeding, only a denial of discharge and determination of nondischargeability.  As such, the plaintiff's request that the court strike the defendants' offset or counterclaim assertion is alternatively moot.

## V.

In accordance with the foregoing, the court will enter an order granting the defendants' motion for summary judgment as to the plaintiff's claims based on § 727(a)(2)(A) and § 727(a)(4) and denying defendants' motion as to plaintiff's § 727(a)(5) and § 523(a)(2)(A) claims.  The plaintiff's motion to dismiss will be denied.

# # #